**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 031460 |
| | ) | Chapter 11 |
| RENAISSANCE RESIDENTIAL OF COUNTRYSIDE, LLC, | ) | Judge John H. Squires |
| | ) | |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Renaissance Residential of Countryside, LLC, debtor and debtor in possession, (the "Debtor") for the allowance and payment of an administrative expense pursuant to 11 U.S.C. § 503(a) and (b)(1)(A)(i) in the amount of $23,962.81 to P&L Investments, LLC ("P&L") for post-petition services. For the reasons set forth herein, the Court denies the Debtor's motion and sustains the objections filed by Puritan Finance Corporation and Parkway Bank and Trust Company.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II. FACTS AND BACKGROUND

On August 26, 2009, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is a developer and owner of a residential condominium

conversion project in Palatine, Illinois known as The Woods at Countryside ("The Woods"). The Woods consists of 719 one- and two-bedroom residential condominium units. Approximately thirty-five percent of the units have been sold. The Debtor owns all of the remaining 465 unsold units. In addition, the Debtor leases approximately ninety-two percent of the unsold units. Approximately 451 units are available for rental with 413 of these units leased as of June 2008. According to the Debtor's motion, the decline in the Chicago-area real estate market and depressed economic condition have adversely affected the Debtor's ability to increase its income and occupancy of the units at The Woods. The Debtor continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

P&L is listed in the Debtor's Amended Statement of Financial Affairs as a bookkeeper, accountant, firm, or individual who, within two years immediately preceding the filing of the bankruptcy case, kept or supervised the keeping of books of account and records of the Debtor, audited the books of account and records, or prepared a financial statement of the Debtor. (Docket No. 76, Amended Statement of Financial Affairs at p. 6, Box 19.) P&L has continued to provide the Debtor with post-petition services. However, the Debtor did not seek to retain P&L post-petition as an estate professional under 11 U.S.C. § 327.

On September 2, 2009, the Debtor moved pursuant to 11 U.S.C. § 327(a) to employ and retain CF Capital Partners, Inc. ("CFCP") as asset manager for the Debtor. (Docket No. 20.) In its motion, the Debtor stated that CFCP, among other tasks, was to: coordinate and supervise all services necessary to operate the daily functions of the Debtor's condominium/rental project; coordinate with accountants and attorneys for the Debtor; supervise leasing; and supervise the property manager's daily tasks. (*Id.*) An order granting retention of CFCP was entered on

September 24, 2009. (Docket No. 70.) An order was also entered approving the Debtor's motion to employ the Close Out Group, LLC ("Close Out") pursuant to § 327(a) to perform on-site management services and prepare financial reports. (Docket Nos. 21 & 68.)

On October 5, 2009, after trial on one contested line item in the budget proposed by the Debtor of approximately $70,000, an order was entered authorizing the Debtor's use of cash collateral, which included a monthly payment of $11,625 to P&L for the expense of bookkeeping. (Docket No. 89, Ex. A.) This order also authorized the use of cash collateral for a payment of $10,000 per month to CFCP for professional services. (*Id.*) On December 29, 2009, the Debtor filed the instant motion requesting administrative priority for a claim in the amount of $23,962.81 for post-petition services provided by P&L "for the benefit of the Debtor and the Debtor's operations." (Docket No. 140, ¶ 12.) Specifically, the Debtor alleges that P&L provided three general categories of services to the Debtor after the bankruptcy petition was filed. These categories include: (1) the establishment of a "program to reduce losses to condominium values;" (2) "post-petition bankruptcy support work;" and (3) "assistance with the evidentiary hearing on the Debtor's use of cash collateral." (*Id.* ¶ 16.)

According to the Debtor, the "program to reduce losses to condominium values" consisted of, among other things, email communications with condominium owners and renters, preparation and implementation of the program, investor relations, and phone support. (*Id.* ¶ 17.) P&L's invoice in the amount of $4,675.00 for this category of services lists the following tasks: draft broadcast email communications; coordinate approval of broadcast communications; assist in canceling auto debits; assist in the termination of PLSG auto payments; assist in account overdraft resolutions; preparation of PLSG-BB transfers schedules; creation of phone directory of PLSG

participants; PLSG expiration letter draft; draft communication to the Village of Palatine rental dwelling licenses requirements; coordinate obtaining release and termination from counsel for implementation; preparation and updates of ML control payment October; master lease payable administration (require signed release and termination agreements); investor relations and phone support; and upon request provide copies of ML files, charge back detail or check calculations. (*Id.* at Ex. A.)

According to the Debtor, P&L's "post-petition bankruptcy support work" consisted of, among other things, the preparation and maintenance of a contract matrix, the preparation of employment affidavits, creation of an unsold inventory worksheet, reviewing the Debtor's Amended Schedules, and attending the 11 U.S.C. § 341(a) meeting of creditors. (*Id.* ¶ 18.) P&L's invoice in the amount of $9,722.50 for this category of services lists the following tasks: finding, copying, scanning contracts for CFCP and attorneys; meeting with Michael Fish to review bankruptcy worksheet requirements; prepare, update, and maintain contract matrix; vendor addresses for open pre-petition payables; assist in affidavits-Gevity, Close Out Group, P&L; certificate of insurance; canceled check from new DIP account; prepare excel worksheet Parkway PLSG benefit; completion of bankruptcy worksheets requested by attorneys; Parkway earnest money accounts investigation; bankruptcy questionnaire draft responses provided to CFCP; developer unsold unit inventory worksheet; security deposit registry; additional contact information on 20 largest creditors; Amended Schedules review; first creditors' meeting; vendors over $5,000 in payments; CS 6 week cash plan; office furniture and electronic equipment inventories; CS Oct cash plan. (*Id.* at Ex. B.)

According to the Debtor, P&L's "assistance with the evidentiary hearing on the Debtor's use of cash collateral" included, among other things, emails with condominium owners and renters requesting attendance with the Debtor's attorneys, coordination and completion of relevant affidavits, working directly with the Debtor's attorneys, creation of exhibits for the hearing, and analysis of evidence for the hearing. (*Id.* ¶ 19.) P&L's invoice in the amount of $9,317.50 for these services lists the following tasks: prepare phone script communicating the bankruptcy filing; broadcast email needing their attendance at meeting with RRCS attorneys; coordinate and assist in the completion of affidavits; preparation and updates of ML summary for testimony; requests from Kymn Harp for support and worksheets; monthly mortgage payments-control worksheet; meeting/phone calls with participants; finalize ML summary for testimony; PLSG witness control worksheets and daily updates and communication thereof; meeting with Harp and Steve Shaykin witness preparation; PLSG witness meeting; prepare of schedules for attorney; PLSG-Parkway Bank worksheet; and comparison of shortfalls schedule from Parkway attorney. (*Id.* at Ex. C.)

P&L's invoices do not specify the amount of time spent on each specific service listed. The invoices list the names of five individual P&L employees with the numbers of hours each spent working on the entire general service category, but fail to specify which employee performed each of the various specific tasks set forth. The Debtor fails to provide any explanation as to why the individual employees listed on the invoice bill at different hourly rates for services provided. In its reply in support of its motion, the Debtor attached time sheets from P&L further describing the services provided which contain the number of "billable hours" spent on each specific service. (Docket No. 166.) In this document, each service was labeled as one of three service categories: "Bankruptcy Issues;" "Evidentiary hearing for RRCS Cash Collateral;" and

"Transition Support." (*Id.* at Ex. B.) Total "billable hours" are listed for each category. It remains unclear from the P&L invoices and time sheets which P&L employee performed what task and for what increment of time. In total, the Debtor is seeking payment of an administrative expense claim to P&L under § 503(a) and (b)(1)(A)(i) in the amount of $23,962.81.

In its reply, the Debtor contends that it and P&L entered into a service contract in December of 2008 with the principal purpose for P&L to provide the Debtor with "property accounting." (*Id.* at p. 1.) According to the Debtor, the "post-petition bankruptcy support work" that is the basis of the Debtor's motion was not part of P&L's "property accounting" fees that are also a part of the Debtor's monthly operating budget and the cash collateral orders, but were specifically enumerated in the P&L contract as "reorganization legal support services." (*Id.* at Ex. A, p. 2.) The "reorganization legal support services" were provided by P&L as a part of the P&L contract in which P&L agreed to provide the Debtor with services for "Special Projects." (*Id.*)

On January 4, 2010, Puritan Finance Corporation ("Puritan") filed an objection to the Debtor's motion for payment of an administrative expense claim to P&L. On January 19, 2010, Parkway Bank and Trust Company ("Parkway") filed an objection to the Debtor's motion. Puritan and Parkway, the principal secured creditors in the case, maintain that the services provided by P&L to the Debtor go beyond traditional bookkeeping and instead fall within the scope of § 327 professional services. According to Puritan and Parkway, the Debtor's request for payment to P&L should be denied because P&L was not retained as an estate professional under § 327.

## III. APPLICABLE STANDARDS

### A. Requirements for Approval of Professional Services

Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons. . . ." 11 U.S.C. § 327(a). Section 330(a)(1), in turn, provides that "the court may award to . . . a professional person employed under section 327 . . . (A) reasonable compensation for actual, necessary services rendered by the . . . professional person . . . and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

The purpose of § 327 is to allow the bankruptcy court to control administrative expenses. *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992). Section 327 permits the debtor-in-possession to retain regularly employed professionals on salary if necessary in the operation of the debtor's business. *Id.* In order to be paid from the estate, a professional must have been employed with court approval. *In re Weinschneider*, 395 F.3d 401, 403-04 (7th Cir. 2005) (*citing Lamie v. United States Trustee*, 540 U.S. 526, 538-39 (2004)); *In re Milwaukee Engraving Co.*, 219 F.3d 635, 637 (7th Cir. 2000); *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662-63 (Bankr. N.D. Ill. 2001). Absent such approval there is no right to compensation. *Madison Mgmt. Group*, 137 B.R at 284 (*citing In re Banhalmi*, 84 B.R. 123, 125 (Bankr. N.D. Ill. 1988)).

The Bankruptcy Code does not specifically define the term "professional." *In re Rusty Jones, Inc.*, 109 B.R. 838, 843 (Bankr. N.D. Ill. 1989). The term "professional" has been interpreted to mean a person whose occupation plays a central role in the administration of the bankruptcy case. *Id.* at 843; *Madison Mgmt. Group*, 137 B.R. at 283; *In re United Color Press,*

*Inc.*, 129 B.R. 143, 145 (Bankr. S.D. Ohio 1991). "Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 . . . , 'professionals.'" *Madison Mgmt. Group*, 137 B.R. at 283. Thus, their employment must be approved by the bankruptcy court. *Id.* The determination of whether a person is a professional for the purpose of § 327 is made on a case-by-case basis. *Id.* "Form is not determinative. The bankruptcy court should consider the substance of the person's employment over the form in determining whether the person is a professional. . . ." *Id.*

A "professional" has been defined as an employee that performs non-repetitive tasks involving the "exercise of judgment and discretion" in order to "assure the company's future viability," such as "development of a business plan, . . . [a]ssistance and supervision of bookkeeping and financial functions relating to receivable collections, . . . lease negotiations, disposal of nonessential assets, and supervision of personnel." *Rusty Jones*, 109 B.R. at 843-44. "Those tasks touch the full range of [the] Debtor's present and future operations, the administration of its bankruptcy, the marshalling and disposition of its assets, its personnel, and its finances. . . . It is difficult to envision a more expansive role in the administration of [the bankruptcy case]." *Id.* at 844. Courts have considered the following factors in making the determination of whether an employee is a "professional" within the meaning of § 327:

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations[,] (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate . . . , (5) the extent of the

> employee's involvement in the administration of the debtor's estate . . . , and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

*In re Am. Tissue, Inc.*, 331 B.R. 169, 173 (Bankr. D. Del. 2005) (*quoting In re First Merchants Acceptance Corp.*, No. 97-1500 JJF, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997)). The "list is not exclusive . . . [but] reflects many of the considerations that have impacted judicial decisions in this area." *First Merchants*, 1997 WL 873551, at *3.

Federal Rule of Bankruptcy Procedure 2014 sets forth the procedures for application for employment under § 327. The application for employment must state, among other things: the specific facts showing the necessity of the employment; the reasons for the selection of the proposed professional; the professional services to be rendered; and, to the best of the applicant's knowledge, all of the proposed professional's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any persons employed in the office of the United States trustee. FED. R. BANKR. P. 2014. The professional must also file a verified statement setting forth any connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *Id.* The disclosures in the application and the Rule 2014 affidavit must be complete and "explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *Midway*, 272 B.R. at 662.

Section 1107(a) provides in relevant part, that a "debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a

case under this chapter." 11 U.S.C. § 1107(a). "Section 1107 makes the language in . . . § 327 regarding the employment of professional persons applicable to the debtor-in-possession." *Banhalmi*, 84 B.R. at 126. Section 1108 permits a debtor-in-possession to operate the business in normal course without prior approval of the bankruptcy court. Normal course activities may include the employment of non-administrative employees. *Rusty Jones*, 109 B.R. at 841. Thus, "[p]ersons who are not charged with administering the estate, but who assist the debtor in other capacities may not have to be employed under . . . § 327 even though their personal employment apart from what they do for the debtor is 'professional.'" *Id.* This supposed "ordinary course" exception is argued by the Debtor and P&L as a predicate for payment and to obviate the necessity for an order of retention under § 327.

In the context of a debtor's ordinary course of business, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. *Id.* For the purpose of § 327(a), a professional person is "limited to persons in those occupations which play a central role in the administration of the debtor proceeding. Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate." *Id.* at 842 (*quoting Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986)).

Section 1108 does not contain the requirement of disinterestedness on those employed pursuant to it. *Id.* Thus, "[t]he key distinction between § 327 and § 1108 employment is whether the professional person seeking employment will be administering or assisting with the administration of the case." *Id.* Moreover, § 1108 simply allows the trustee, or in this case, the

Debtor, as debtor-in-possession, to operate the business. The statute does not address the continued use of employee or independent contractor services. Hence, nothing in the statutory text excuses the practical need for retention orders when required by § 327.

**B. Retroactive Approval of Professional Employment**

The provisions of the Bankruptcy Code governing employment of professional persons are strictly construed. *Banhalmi*, 84 B.R. at 126. "The policy reasons for the strict application of § 327 to any professional . . . are strong and definite. The assets of the debtor in possession must be protected from unnecessary and unjust diminutions in order to protect the rights of creditors." *In re Providence Television Ltd. P'ship*, 113 B.R. 446, 451 (Bankr. N.D. Ill. 1990). Generally, the debtor's retention of a professional must be approved by the court in advance of the services to be performed. *In re Anicom, Inc.*, 273 B.R. 756, 761 (Bankr. N.D. Ill 2002). "Prior approval is strongly preferred because it permits close supervision of the administration of an estate, wards off 'volunteers' attracted to the kitty, and avoids duplication of effort." *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994). "The fact that such services may have been beneficial or valuable to the estate and performed in good faith is immaterial. . . ." *Providence Television*, 113 B.R. at 451. "This rule must necessarily be firm in order to maintain control of costs. Otherwise, the necessary power of the court to ensure that assets of the estate are not wasted would be undermined." *Id.* (internal quotation omitted). Thus, when in doubt, a prudent professional should seek to be retained under § 327 in order to be paid for the services rendered.

"The Seventh Circuit, however, has held that the equitable aspects of bankruptcy proceedings permit the court to retroactively approve the employment of [professionals] under the proper circumstances." *Banhalmi*, 84 B.R. at 127 (*citing Stolkin v. Nachman*, 472 F.2d 222

(7th Cir. 1973)). Retroactive approval of employment is limited to cases in which prior approval would have been appropriate and extraordinary circumstances are present. *Id.*; *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 105 (3d Cir. 1988); *Gowan v. Lefkas Gen. Partners No. 1017 (In re Lefkas Gen Partners No. 1017)*, 153 B.R. 804, 808 (N.D. Ill. 1993). A finding of extraordinary circumstances requires consideration of equitable factors, including:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*Lefkas*, 153 B.R. at 808 n.2 (*quoting In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986)). In those circumstances, approval may be granted in the discretion of the bankruptcy court. *Id.* Mere oversight or inadvertence of counsel, however, does not constitute excusable neglect sufficient to relieve the parties of the consequences of their actions. *Arkansas*, 798 F.2d at 649-50.

**C. 11 U.S.C. § 503(a) and (b)**

Section 503(a) of the Code permits an entity to "file a request for payment of an administrative expense. . . ." 11 U.S.C. § 503(a). Pursuant to § 503(b)(1)(A)(i), post-petition costs and expenses of preserving the estate are allowed as administrative expenses. Section 503(b)(1)(A)(i) provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
>
> (1)(A) the actual necessary costs and expenses of preserving the estate, including–
>
> (i) wages, salaries, and commissions for services rendered after the commencement of the case. . . .

11 U.S.C. § 503(b)(1)(A)(i). Administrative priority claims are to be strictly construed because of the presumption that the debtor has limited resources to equally distribute among creditors. *In re Nat'l Steel Corp.*, 316 B.R. 287, 299 (Bankr. N.D. Ill. 2004), *aff'd sub nom. Hayes Lemmerz Int'l, Inc. v. Nat'l Steel Corp.*, No. 04 C 8110, slip op. (N.D. Ill. May 17, 2005); *In re Kmart Corp.*, 293 B.R. 905, 909 (Bankr. N.D. Ill. 2003). The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *Nat'l* Steel, 316 B.R. at 300. In general, a claim will be afforded priority under § 503(b)(1)(A) if "the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'" *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 773 (7th Cir. 2004) (*quoting In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)).

"[E]xpenses incurred by the debtor-in possession in attempting to rehabilitate the business during reorganization are within the ambit of § 503." *Jartran*, 732 F.2d at 586. In *Jartran*, the Seventh Circuit held that when third parties are induced to supply goods or services to the debtor-in-possession, and the estate is benefitted, the claims of those entities should be afforded priority so as to provide incentive to third parties to furnish credit necessary for the debtor's reorganization. *Id.* However, a claim should be granted administrative priority status only if the claim comports with the language and underlying purpose of § 503. *Id.*

Section 503(b)(2) permits administrative priority for "compensation and reimbursement awarded under section 330(a)" to professionals that have received pre-approval by the bankruptcy court under § 327. 11 U.S.C. § 503(b)(2). According to the Seventh Circuit:

> By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements. Statutes directly addressing a subject prevail over silences and implications of other provisions. We so held, for §§ 327, 330, and 503 in particular, in *In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994). . . .

*Milwaukee Engraving*, 219 F.3d at 636.

The majority of appellate decisions on the relation between §§ 327, 330, and 503(b) have found that a professional may not avoid the requirements of §§ 327 and 330 by seeking administrative expense allowance for fees under § 503(b)(1)(A). *Id.* at 639; *Cushman & Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship)*, 189 F.3d 86, 88 (2d Cir. 1999); *F/S Airlease*, 844 F.2d at 108-09; *In re Albrecht*, 245 B.R. 666, 670-71 (B.A.P. 10th Cir.), *aff'd*, 233 F.3d 1258 (10th Cir. 2000). If professionals "were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval [for the retention of professionals]." *F/S Airlease,* 844 F.2d at 109. "One might as well erase § 503(b)(2) from the statute if [professionals] may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)." *Milwaukee Engraving*, 219 F.3d at 637.

Hence, a professional without approval of employment under § 327(a), cannot seek compensation under § 503(b)(1)(A). Therefore, a "professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate." *Albrecht,* 245 B.R. at 671 (internal quotation omitted). It is also axiomatic that claims under § 503(b)(1)(A) should not be used as an end-run around § 327's retention requirements.

## IV. DISCUSSION

The Debtor does not contend that P&L is entitled to receive compensation under § 330. Instead, the Debtor argues that the services P&L provided were not professional services, and it was not required to seek approval of P&L's employment by the Court under § 327.

### A. P&L's services were "professional" for the purpose of § 327

The Court finds that the services provided by P&L were "professional" for the purpose of § 327. The Debtor's operating budget already includes $11,625 per month for payment to P&L in order for P&L to continue its ordinary pre-petition bookkeeping services. The invoices and time sheets provided by P&L, however, describe its services as preparation of the Debtor's bankruptcy schedules, assistance with witness preparation in connection with the contested cash collateral proceeding, and attendance at the § 341 meeting of creditors. The Debtor's motion does not identify the occupations of the P&L employees who billed for these services. Nevertheless, these P&L employees created exhibits, analyzed evidence, drafted legal documents, and discussed the Debtor's case with witnesses and attorneys. The Debtor describes these services as "bookkeeping related services" and "post-petition bankruptcy services," but then admits that the services were "reorganization legal support services" pursuant to a pre-petition contract with P&L that allowed P&L to provide additional services for "Special Projects."

Regardless of how they are labeled, the services are of an accounting, legal, and consulting nature, and constitute much more than simple bookkeeping. Further, the services were directly related to the administration of the Debtor's estate. They are tasks that require some degree of professional judgment, discretion, skill, or training. These services were not a part of P&L's routine pre-petition bookkeeping services. In providing these services, P&L was intimately

involved in the administration of the Debtor's estate, especially with respect to the tasks regarding the contested cash collateral hearing.

If the Debtor intended to employ P&L for these additional services, it should have applied for P&L's retention under § 327. An application and Rule 2014 affidavit would have provided notice to the Court and creditors that the Debtor intended to expand P&L's ordinary pre-petition bookkeeping services to services directly involved in the administration of the estate. The Court would have been in the position to determine if P&L's services were reasonable and whether they were necessary given that professional services were already being provided by two other professionals (CFCP and Close Out) employed by the Debtor for the ongoing service to and development of The Woods. Full disclosure and prior approval of the Debtor's retention of bankruptcy professionals is required to protect creditors from unnecessary diminution of the Debtor's assets. *See Providence Television*, 113 B.R. at 451.

Even considering equitable factors, P&L would not be entitled to retroactive compensation for professional services. *See Lefkas*, 153 B.R. at 808 n.2. Extraordinary circumstances are not present in this case. The Debtor applied and received approval from this Court to employ two other entities to provide related professional services. Thus, the Debtor was clearly aware of the requirements and proper procedures for retaining professionals pursuant to § 327.

**B. P&L is not entitled to an administrative claim pursuant to § 503(b)(1)(A)(i)**

Because the Debtor received neither pre-approval nor retroactive approval, § 503(b)(2) does not apply. The Debtor argues that P&L's fees and expenses should be allowed under § 503(b)(1)(A)(i). It is well-established, however, that § 503(b)(1)(A) may not be used to pay or give priority to professional services requiring approval under § 327. *Milwaukee Engraving*, 219

F.3d at 639. Therefore, the Debtor is precluded from avoiding the requirements of §§ 327 and 330 by seeking an administrative expense allowance under § 503(b)(1)(A). *See id.*

## V. CONCLUSION

For the foregoing reasons, the Debtor's motion for the allowance and payment of an administrative expense pursuant to § 503(a) and (b)(1)(A)(i) in the amount of $23,962.81 to P&L is denied and the objections filed by Puritan and Parkway are sustained.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

**DATE:** 2/25/10

John H. Squires

**John H. Squires**
**United States Bankruptcy Judge**

cc: See attached Service List

**SERVICE LIST**

**Renaissance Residential of Countryside, LLC**
**Bankruptcy No. 09 B 31460**

Michael L. Gesas, Esq.
Miriam R. Stein, Esq.
Kevin H. Morse, Esq.
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606

Fred R. Harbecke, Esq.
29 S. LaSalle Street
Suite 945
Chicago, IL 60603

William J. Barrett, Esq.
Janice A. Alwin, Esq.
Barack Ferrazzano Kirschbaum et al
200 W. Madison Street, Suite 3900
Chicago, IL 60606

Elizabeth V. Vandesteeg, Esq.
Jonathan P. Friedland, Esq.
Levenfeld Pearlstein LLC
2 N. LaSalle Street, Suite 1300
Chicago, IL 60602

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604